## THOMSON v. HAYES.

(Supreme Court, Appellate Term. June 22, 1908.)

1. GAMING—WAGERS—VALIDITY.
   Under the common law, all wagers or bets are not illegal.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 24, Gaming, § 1.]

2. SAME—"GAMBLING."
   Where chance enters into a bet as an element, there is a case of "gambling," within Const. art. 1, § 9, forbidding pool selling, book making, or any other kind of gambling.
   [Ed. Note.—For other definitions, see Words and Phrases, vol. 4, pp. 3023–3028; vol. 8, p. 7668.]

3. SAME—"UNKNOWN EVENT"—"CONTINGENT EVENT"—"GAMBLING."
   A bet by parties, not aware of the fact, involving the question whether a third person has a lease on designated real estate, refers to an event unknown to the bettors, and constitutes "gambling" within Const. art. 1, § 9, forbidding pool selling, book making, or any other kind of gambling, and within Betting and Gaming Law, 1 Rev. St. (1st Ed.) p. 662, pt. 1, c. 20, tit. 8, §§ 8, 9, declaring that bets depending on any chance, "or unknown or contingent event," shall be unlawful, etc.; the word "unknown" referring to that which was unknown to the parties to a wager, the word "contingent" showing that the event referred to applies equally to existing or nonexisting events, the word "event" meaning that in which an action, operation, or series of operations terminates and having reference to something that has taken place, the words "unknown event" meaning a past circumstance unknown to the parties, and the words "contingent event" referring to one that hereafter may or may not occur.
   [Ed. Note.—For other definitions, see Words and Phrases, vol. 2, p. 1498; vol. 3, pp. 2513–2514; vol. 8, p. 7186.]

Appeal from Municipal Court, Borough of Manhattan, Eighth District.

Action by Albert E. Thomson against Arthur Hayes. From a judgment of the Municipal Court in favor of defendant, plaintiff appeals. Reversed, and new trial ordered.

Argued before GILDERSLEEVE, P. J., and GIEGERICH and GREENBAUM, JJ.

Abraham Weltfisch, for appellant.
Philip Carpenter (Henry Eckhard, of counsel), for respondent.

GREENBAUM, J. Plaintiff deposited with defendant as stakeholder the sum of $150, pursuant to the terms of a written memorandum, designated by the parties as a "bet," whereby the plaintiff bet with one Forgotson that a certain party named Levy had then in his possession a lease of certain premises at the southeast corner of Broadway and Forty-Third street. Forgotson at the same time deposited a like sum of $150 with the defendant. The deposit was made on December 12, 1907, and the question of difference between the parties was to be determined within five days from said date. Subsequent to the five days the plaintiff demanded of defendant the return of the $150 deposited by him. It was conceded that Levy did not have possession of the lease at the time the bet was made.

The action is brought for money had and received pursuant to the provisions of sections 8 and 9 of the betting and gaming law. 1 Rev.

St. (1st Ed.) p. 662, pt. 1, c. 20, tit. 8; 1 Birdseye's Rev. St. (3d Ed.) pp. 299, 300, §§ 4, 5. Section 8 declares that:

"All wagers, bets or stakes, made to depend upon any race, or upon any gaming, by lot or chance, or upon any lot, chance, casualty or unknown or contingent event whatever, shall be unlawful. All contracts for or on account of any money or property, or thing in action so wagered, bet or staked, shall be void."

Section 9 expressly confers upon the party making a deposit upon the event of any wager or bet prohibited by the statute the right to sue the stakeholder and recover from him the money or thing deposited, "whether the same shall have been paid over by such stakeholder or not and whether any such wager be lost or not."

Undoubtedly under the common law all wagers or bets were not illegal; but we are dealing with a statute, and if thereunder the making of the bet in question was illegal then is plaintiff entitled to a recovery. Mendoza v. Levy, 98 App. Div. 326, 90 N. Y. Supp. 748.

Defendant contends that the event upon which the bet was based was not an "unknown or contingent event," within the contemplation of the act, inasmuch as the lease which was the subject-matter of the bet was at the time the wager was made either possessed or not possessed by Levy, and the actual fact in that respect was then a "known" event, even though it may not have been known to the parties to the bet. It is contended that an "unknown event" refers to that which cannot be known at the time of the making of the bet, but relates to that "which can become known only in the future and dependent upon circumstances which have not yet transpired."

Article 1, § 9, of the state Constitution, expressly forbids "any lottery or the sale of lottery tickets, pool selling, bookmaking or any other kind of gambling" within the state. A "gambler" has been defined as one "who follows or practices games of chance or skill with the expectation and purpose of thereby winning money or other property. Buckley v. O'Niel, 113 Mass. 193, 18 Am. Rep. 466." 1 Bouvier's Law Dictionary (Ed. 1897) p. 866. However else gambling may be defined, or whatever else may be deemed to be included thereunder, it seems clear that, where chance enters into the bet as an element, we have a case of gambling. It is to be assumed from the facts before us that the parties who made the bet were not aware of the actual fact as to the lease in question. The bet referred to an event unknown to the bettors, and so far as they were concerned it was a chance as to which of them would win. Such an act constituted a species of gambling, within the express provision of the Constitution above quoted, and was therefore illegal, and was also in direct violation of the betting and gaming law, which forbids a bet depending on "chance."

It seems to me, too, that the bet in question comes within the "unknown or contingent event" expressed in the statute. These words are to be construed with reference to the purpose of the act and the other words of the act. As the element of "chance" is to be considered in the bet, it may be said that the word "unknown" was only intended to refer to that which was unknown to the parties to the wager. If it were intended to limit the operation of the statute to events that were to occur in the future, it would have been unnecessary to employ the words "unknown or contingent event whatever." Such words

"as any future event whatever" would have been employed. The circumstance that the word "contingent" is used shows that the event referred to in the act applied equally to existing or nonexisting events. "Contingent implies the idea of futurity. It refers to something that may or may not happen." Webster's Unabridged Dictionary. "Unknown" refers to something as to which the parties are not informed or have no knowledge. It usually has reference to existing matters or conditions. It is the negative of "known." To know is "to have knowledge, to possess information" (Webster's Unabridged Dictionary), obviously of something existent. Not to know, or "unknown," would therefore in ordinary parlance have reference to an existent matter not known to the parties.

Of course, a future event could not possibly be known to any one, and it might be said that, had the word "unknown" alone been used, it might be construed as referring to existent and nonexistent events. But the use of the word "contingent," disjunctively added to "unknown," indicates an intention to refer either to events existent, but not known to the parties, or those that are "contingent"—that is, may happen in the future. The word "event" in itself does not imply futurity. An "event" is "that in which an action; operation, or series of operations terminates." 1 Bouvier's Law Dictionary (Ed. 1897) p. 700. Strictly speaking, an event has reference to something that has taken place. It cannot well be an event until it happens. It becomes an event when it does happen. An event ordinarily, therefore, implies a past occurrence. An unknown event would therefore mean a past circumstance unknown to the parties. A contingent event would refer to one that hereafter may or may not occur.

The following illustration of the palpable absurdity of construing the statute as referring only to an unknown event to happen in the future may be given: If A. bets B. a certain sum of money that upon tossing a coin the head would be up, the act would refer to a future event, since at the time of making the bet the coin had not been tossed, and whether it was head or not was an event not known to any one. Such a bet would concededly be illegal. But suppose one of the parties, before making the bet, tossed the coin in such manner that he was not aware of the result, or procured a third party to toss it, so that neither party to the bet knew whether the head was "up" or "down," and the parties engaged in the bet after the tossing and when the fact that the head was either "up" or "down" was an existent one; is the bet then to be construed as legal? So far as the parties were concerned, the event was unknown, and the winning depended upon chance. It was an act of gambling—an illegal act, forbidden by the Constitution and by the statute. Upon the conceded facts plaintiff was entitled to judgment.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event.

GILDERSLEEVE, P. J., concurs.

GIEGERICH, J. (concurring). I concur in the view that the event upon which the wager in this case was made to depend upon was "un-

known and contingent," within the meaning of the statute. Rev. St. (1st Ed.) p. 662, pt. 1, c. 20, tit. 8, § 8. The definition contained in Harris v. White, 81 N. Y. 532, 539, upon which the respondent relies, cannot be given a controlling effect upon the present facts. The opinion in that case pointed out the distinction between a race for a prize or a premium and a bet or wager. In making such distinction the court said:

"A bet or wager is ordinarily an agreement between two or more that a sum of money or some valuable thing, in contributing which all agreeing take part, shall become the property of one or some of them on the happening in the future of an event at the present uncertain; and the stake is the money or thing thus put upon the chance. There is in them this element that does not enter into a modern purse, prize, or premium, viz., that each party to the former gets a chance of gain from others, and takes a risk of loss of his own to them. 'Illegal gaming implies gain and loss between the parties by betting, such as would excite a spirit of cupidity.' People v. Sergeant, 8 Cow. 139. A purse, prize, or premium is ordinarily some valuable thing, offered by a person for the doing of something by others, into the strife for which he does not enter."

This distinction was reaffirmed in People ex rel. Lawrence v. Fallon, 152 N. Y. 12, 46 N. E. 296, 37 L. R. A. 227, 57 Am. St. Rep. 492, where it was held that:

"The offering or paying, by a racing association, of premiums or prizes to the successful horses, out of its general funds, to which the horse owners participating in the races have contributed by payments into the general treasury of the association, constituting a part of its general assets for the time being, subject only to the obligation of the association to pay the amount of the several prizes, does not constitute gambling, within the provisions of the Constitution (article 1, § 9), which forbids lotteries, pool selling, book making and every other kind of gambling."

A definition given under such circumstances should not be regarded as an adjudication that only future events could be the subject of the gambling prohibited by our statute. Besides, by its own terms, the definition does not purport to be comprehensive. It begins by saying that a bet or wager is ordinarily an agreement of the kind stated. Such language is entirely consistent with the addition of a clause broadening the definition, so as to embrace, in addition to future events at present uncertain, the ascertainment of facts in dispute, though such facts may have already occurred, and may be known to others than the ones who make the wager.

For the reasons stated, I vote for a reversal of the judgment.